UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARDELL SPENCE,

               Plaintiff,

    – against –

KATHLEEN BUKOFZER, and CITY OF NEW YORK
DEPARTMENT OF HOUSING PRESERVATION &
DEVELOPMENT,

               Defendants.

**OPINION AND ORDER**

15 Civ. 6167 (ER)

---

Ramos, D.J.:

      Cardell Spence ("Plaintiff" or "Spence") alleges thirteen claims, sounding primarily in employment discrimination and retaliation, against Kathleen Bukofzer ("Bukofzer") and the City of New York Department of Housing Preservation and Development ("HPD") (collectively, the "Defendants").  Before the Court is Defendants' partial motion to dismiss Plaintiff's Third Amended Complaint ("TAC") pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND[1]

      Ms. Spence, a sixty-one year old black female, has worked for HPD since 1980.  TAC (Doc. 28) at ¶¶ 5, 16.  When Spence began working for HPD as a clerk, she earned

---

[1] The following factual background is based on allegations in the Third Amended Complaint, Doc. 28, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court also considers documents incorporated by reference therein, and public filings filed with the New York State Division of Human Rights submitted to the Court and annexed to the Declaration of Scott C. Silverman ("Silverman Decl.") (Doc. 30).  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Day v. Distinctive Pers., Inc.*, 656 F. Supp. 2d 331, 332 n.2 (E.D.N.Y 2009) ("[i]n deciding motions to dismiss employment

approximately $38,000 a year. *Id.* at ¶ 17.  In 1988, she was promoted to the position of

Provisional Housing Inspector, and earned approximately $53,000. *Id.* at ¶ 18.  Spence explains

that although her title was Provisional Housing Inspector, she did the same work as Housing

Inspectors. *Id.*  In 2011, a new law required that she take a test and reapply in order to continue

working under the title of Housing Inspector. *Id.* at ¶ 18.  In March 2012, Spence took and

passed the test. *Id.* at ¶¶ 18, 21.  She was not, however, given the title of Housing Inspector

immediately. *See id.* at ¶ 25.

In approximately June 2013, HPD began to interview the individuals who passed the

housing inspector test. *Id.* at ¶ 22.  Spence was promoted to Housing Inspector in March 2014,

approximately two years after she passed the test, and she received an annual salary of

approximately $54,000 a year. *Id.* at ¶ 25.  She was assigned to the Bronx office, where

Defendant Bukofzer was a Chief. *Id.* at ¶¶ 9, 25.  As a new Housing Inspector, Spence was put

on a one year probationary period, and her performance was subject to assessment on a quarterly

basis. *Id.* at ¶ 26.

Spence alleges a number of examples of discriminatory behavior that she was subjected

to once she arrived at the Bronx Office.  For example, on March 4, 2014, Bukofzer immediately

issued her a report for leaving her post without permission. *Id.* at ¶ 28.  But Spence claims that

she was not informed to whom she should report and thought she had permission to leave her

post to carry out basic job functions. *Id.*  Defendants also regularly assigned Spence to conduct

inspections by herself in unsafe "2-man areas" that were generally assigned to two or more

inspectors for safety reasons. *Id.* at ¶ 29.  Additionally, Spence alleges that black employees

---

discrimination actions under Title VII, courts regularly take notice of EEOC and NYSDHR filings and
determinations relating to plaintiff's claims.").

were called "monkeys" and "slaves." *Id*. at ¶¶ 31–33.[2]  Spence also alleges that Bukofzer posted

signs around the office saying, "Not my monkey, not my circus" as a reference to the phrase

"Not my job, not my problem," but she and her co-workers viewed the sign as racially

derogatory.  *Id*. at ¶ 33.  Spence also cites a specific instance when she was excluded from

attending a meeting and another when she was accused of lying in a meeting led by Bukofzer.

*Id*. at ¶¶ 38–39.  It was at this second meeting in May 2014 that Spence was demoted to

performing radio dispatch duties with an annual salary of approximately $41,000 a year.  *Id*. at ¶

40.

     In June 2014, Spence complained to HPD's internal Equal Employment Opportunity

("E.E.O") Department about what she perceived to be a "racially hostile work environment" and

the "continuing racial discrimination" she was subjected to.  *Id*. at ¶¶ 41–42.  She then followed

up with another internal complaint on September 12, 2014.  *Id.* at ¶ 44.  This department was

also responsible for conducting the quarterly evaluations that were required during Spence's

probationary period as a Housing Inspector, but she notes it did not conduct them.  *Id.* at ¶ 43.

     Spence was evaluated once during her probationary year, in September 2014—at

approximately the same time she filed her second complaint of discrimination to the E.E.O.

Department.  *Id*. at ¶ 45.  She was evaluated by supervisors named Wilson and Frias, and they

rated her as "satisfactory" for her work during the probation period.  *Id.*  However, Bukofzer

"decided to re-evaluate Ms. Spence herself," and issued Spence the lowest possible rating of

"unsatisfactory."  *Id.*  Defendants did not provide Spence with a copy of the evaluation for

discussion or acknowledgement.  *Id.* at ¶ 46.  On October 17, 2014, Spence was called to a

meeting where she was stripped of her Housing Inspector title and demoted to payroll clerk, with

---

[2] Spence does not allege whether these terms were directed to her specifically.

an annual salary of approximately $41,000.  *Id.* at ¶¶ 48–50.  She remains in that position today. *Id.*

On December 30, 2014, Spence filed a discrimination complaint against Defendants with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"), charging unlawful discrimination on the basis of race and sex.  Doc. 30, Ex. A (SDHR Verified Complaint in *Spence v. City of New York Housing Preservation and Development*, SDHR Complaint No. 10172622; Federal Charge No. 16GB500907).  On June 16, 2015, the SDHR dismissed the complaint as time-barred because her allegations occurred more than one year prior to filing, and because their investigation "failed to uncover sufficient evidence to establish a causal nexus between [Defendants'] treatment of [Spence] and her race/color and sex."  *See* Doc. 30, Ex. B (SDHR Determination and Order After Investigation in *Spence v. City of New York Housing Preservation and Development*, SDHR Complaint No. 10172622; Federal Charge No. 16GB500907) ("SDHR Order").  On July 23, 2015, the EEOC provided Spence with a Right to Sue letter.  TAC at ¶¶ 15, 50.

## II.    PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on August 5, 2015 by filing a complaint *pro se* against Bukofzer and HPD, and the matter was referred to the Court's Mediation Program. Docs. 1, 6.  Spence then amended her complaint twice, on October 20, 2015 and January 21, 2016 respectively.  Docs. 8, 20.  A mediation session was held on February 29, 2016, and the mediator reported that settlement was reached on all issues.  Doc. 25.  On March 1, 2016, the

4

Court then ordered that "the … action be … discontinued, without costs to either party, subject to reopening should the settlement not be consummated within thirty (30) days." Doc. 26.

Approximately five weeks later, on April 11, 2016, Spence retained counsel. Doc. 27. On April 14, 2016, Spence filed her TAC. Doc. 28. On April 28, 2016, Defendants filed their motion to dismiss the TAC, and briefing was completed on May 9, 2016. *See* Docs. 29, 33.

Plaintiff wrote to the Court on January 24, 2017 notifying the Court that the parties did not reach settlement and were under the impression that the case thus remained active, as evidenced by the filing of the TAC and subsequent motion practice. Doc. 34. The Court directed Defendants to respond by February 1, 2017, *see* Doc. 35, but Defendants did not do so. In light of Defendants' failure to respond, the Court GRANTS Plaintiff's request to re-open the case in light of the parties' failure to reach a settlement agreement, and now considers the pending motion to dismiss.

The TAC asserts thirteen causes of action in twelve counts:

- Section 1981 discrimination and retaliation (Count I);

- Title VII discrimination (Count II) and retaliation (Count III);

- New York State Human Rights Law ("NYSHRL") discrimination under New York State Executive Law § 296 (Count IV), retaliation under New York State Executive Law § 296(7) (Count V), and aiding and abetting discrimination under New York State Executive Law § 296(6) (Count VI);

- The New York City Human Rights Law ("NYCHRL") discrimination under the New York Administrative Code § 8-107 (Count VII), retaliation under the New York Administrative Code § 8-107(l)(e) (Count VIII), aiding and abetting discrimination under the New York Administrative Code § 8-107(19) (Count IX),

and vicarious discrimination under the New York Administrative Code § 8-107(13) (Count X);

- Intentional infliction of emotional distress (Count XI); and

- Negligent infliction of emotional distress (Count XII).

Spence now withdraws seven of her thirteen claims—specifically, all the claims asserted under NYSHRL and NYCHRL.  Plaintiff's Opposition to Defendants' Motion to Partially Dismiss the Third Amended Complaint ("Pl.'s Opp.") (Doc. 32) at 3 ("[P]laintiff consents to the withdrawal of Counts using the SHRL and CHRL, however asserts that the allegations as to facts go to other counts of the complaint.").  Therefore, the claims that remain are alleged under § 1981, Title VII, and state tort law for negligent and intentional infliction of emotional distress.

While the TAC labels each cause of action using the titles "discrimination" and "retaliation," the TAC also makes reference to Spence's belief that she was subjected to a hostile work environment.  TAC at ¶ 1; *see also id.* at ¶ 53 ("The aforementioned pervasive discrimination and adverse work consequences created by defendants was clearly an unlawful hostile work environment…").  The Court therefore construes the TAC to also be asserting hostile work environment discrimination claims.  *See, e.g., Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) ("Although the complaint does not explicitly allege discrimination based on a hostile work environment, the complaint alleges 'continued harassment' of Kassner and alleges facts from which we may infer pleading of hostile work environment claims…"); *Meyer v. N.Y. Office of Mental Health*, No. 12 Civ. 6202 (PKC), 2014 WL 1767818, at *6 (E.D.N.Y. May 2, 2014) (construing a hostile work environment claim where no "specific count" alleges hostile work environment, but the allegations sound in that relief).

Defendants move to partially dismiss the TAC on grounds that:  (1) Spence's claims are partially time-barred; (2) the retaliation claim under Title VII is barred by her failure to exhaust

administrative remedies; (3) she fails to plead a plausible claim for discrimination; (3) she fails to

plead a plausible claim for hostile work environment; (4) she fails to plead facts that plausibly

establish a claim for municipal liability under § 1981; and (5) her state tort claims must be

dismissed for failure to comply with notice of claim requirements.  *See* Reply Memorandum of

Law of in Further Support of Defendants' Motion to Partially Dismiss the Third Amended

Complaint ("Defs.' Repl.") (Doc. 33) at 1.  Defendants do not challenge Spence's claims for

discrimination against HPD pursuant to Title VII, or against Bukofzer pursuant to § 1981, but

concede that they are all sufficient only with respect to the circumstances related to her

demotion.  *See id.* at 20.

## III.    LEGAL STANDARDS

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must

accept all factual allegations in the complaint as true and draw all reasonable inferences in the

plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to

credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of

action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*,

550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege

sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the]

complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

## IV.   DISCUSSION

### A.  Statute of Limitations

#### 1.   Title VII

Defendants argue that to the extent Spence alleges discrete discriminatory or retaliatory

acts occurring prior to March 5, 2014, (*i.e.* more than 300 days prior to the filing of her

SDHR/EEOC complaint on December 30, 2014), her Title VII claims are barred by the

applicable 300-day statute of limitations. Defs.' Mem. at 8.  Claimants under Title VII must file

a complaint with the EEOC "within 180 days after the alleged discriminatory act occurred," or

"if [s]he has already filed the charge with a state or local agency that monitors fair employment

practices, [she] must file [her] EEOC charge within 300 days of the alleged discriminatory act."

*Falso v. Gates Chili Cent. Sch. Dist.*, 408 F. App'x 494, 495 (2d Cir. 2011) (summary order); *see

also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002); *EEOC v. Bloomberg

L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) (citing 42 U.S.C. § 2000e–5(e)(1)).  The filing

deadlines for a charge of discrimination effectively act as a "statute of limitations" and a failure

to timely file a charge acts as a bar to a plaintiff's action.  *Hill v. Citibank Corp.*, 312 F. Supp. 2d

464, 472 (S.D.N.Y. 2004); *see also Francis v. City of N.Y.*, 235 F.3d 763, 767 (2d Cir. 2000)

(quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)).

In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), the

Supreme Court held that 42 U.S.C. § 2000e–5(e)(1) "precludes recovery for discrete acts of

discrimination or retaliation that occur outside the statutory time period."  *Id.* at 105.  "[D]iscrete

acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to

identify.  Each incident of discrimination ... constitutes a separate actionable 'unlawful

employment practice.'"  *Id.* at 114.  Even if they are related to the acts alleged in timely filed

charges, discrete discriminatory acts are not actionable if time-barred.  *Id.* at 113.

While discrete claims of discrimination and retaliation must be brought within the 300-

day limitations period to be actionable, a different rule applies with regard to hostile work

environment claims.  The Supreme Court has explained that hostile work environment claims are

different because they "cannot be said to occur on any particular day."  *Id.* at 115.  Rather, such

claims "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a

single act of harassment may not be actionable on its own."  *Id.*  Because hostile work

environment claims by their very nature involve repeated conduct over a long period of time, the

Supreme Court explained that, as long as any act contributing to the hostile work environment

claim falls within the 300-day period, "the entire time period of the hostile environment may be

considered by a court for the purposes of determining liability."  *Id.* at 117.  Thus, the Court

analyzes whether the intentional discrimination/retaliation claims and hostile work environment

claims are time-barred separately.

Here, Spence filed her complaint jointly with the SDHR/EEOC on December 30, 2014.

*See* SDHR Order at 1.  Defendants argue that any discrete discriminatory or retaliatory acts

occurring prior to March 5, 2014 would thus be time-barred for purposes of Title VII.  Defs.'

Mem. at 2–3.  However, Defendants reference only one discrete act in the TAC that would be

barred by the statute of limitations—the report Bukofzer issued Spence on March 4, 2014 for leaving her post without permission. *See* Defs.' Mem. at 5–6.[3]

The Court finds the March 4, 2014 report issued to Spence is a separate and discrete occurrence of discrimination, and that it took place before March 5, 2014.  Accordingly, it is time-barred for purposes of her Title VII discrimination and retaliation claims.  However, to the extent Spence's hostile work environment claim is predicated on any act on or after March 5, 2014, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117.

### 2.  Section 1981

Spence's § 1981 claims are governed by a four year statute of limitations.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that if a plaintiff's claim was "made possible by" post-1990 amendments to § 1981, the claim should be subject to the federal four-year statute of limitations).  Accordingly, Defendants argue that any of Spence's § 1981 claims that occurred prior to August 5, 2011 are time-barred.  However, Spence alleges no acts of discrimination in the TAC prior to this date.  In fact, the TAC alleges that the discrimination and hostile work environment began in approximately June 2013.  *See* TAC at ¶ 13. Therefore, the Court does not dismiss any claims on this basis.

### B.  Failure to State a Claim for Discrimination Under § 1981 and Title VII

### 1.  Analytical Framework for Discrimination and Retaliation Claims

Spence's Title VII and §1981 claims for disparate treatment and retaliation are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in

---

[3] Indeed, Defendants acknowledge that the majority of alleged discriminatory or retaliatory acts in the TAC occurred after March 5, 2014.  *See, e.g.,* TAC at ¶¶ 31–32, 40, 45, 49–50.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of N.Y.*, 795

F.3d 297, 312 (2d Cir. 2015) (applying *McDonnell* framework to Title VII and §1981 claims);

*Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (applying *McDonnell*

framework to retaliation claim).  Under the *McDonnell* framework, a plaintiff alleging

discrimination under Title VII must first demonstrate a *prima facie* case of discrimination.

*McDonnell Douglas Corp.*, 411 U.S. at 802.  The Second Circuit has explained that a plaintiff's

burden at this stage is "*de minimus*."  *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 467

(2d Cir. 2001); *see also Littlejohn*, 795 F.3d at 312 (noting that "reduced *prima facie*

requirements [ ] arise under *McDonnell Douglas* in the initial phase of a litigation").

      If a plaintiff successfully presents a case of discrimination, the defendant must then rebut

the presumption by offering legitimate and non-discriminatory reasons for the adverse

employment action demonstrated in plaintiff's *prima facie* case.  *Abdu-Brisson*, 239 F.3d at 468

(citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  To satisfy the second

step of the *McDonnell* analysis, "[i]t is sufficient if the defendant's evidence raises a genuine

issue of fact as to whether it discriminated against the plaintiff."  *Burdine*, 450 U.S. at 254.  "If

the defendant carries this burden of production, the presumption [of discrimination] raised by the

prima facie case is rebutted," and "drops from the case."  *Id.* at 255 n.10.  Under the third step of

the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove

intentional discrimination by a preponderance of the evidence.  *Fields v. N.Y. State Office of*

*Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997).

      To survive a motion to dismiss under Title VII, "what must be plausibly supported by

facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified,

suffered an adverse employment action, and has at least minimal support for the proposition that

the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see also*

*DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.,* No. 15 Civ. 6218 (PKC), 2017 WL

1034787, at *4 (E.D.N.Y. Mar. 16, 2017) ("At the pleading stage, a plaintiff does not need to

prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas*

*prima facie* case, but the facts alleged must give plausible support to the reduced requirements of

the *prima facie* case.") (citing *Littlejohn*, 795 F.3d at 311) (internal quotation marks omitted).

Courts making the plausibility determination should do so "mindful of the elusive nature of

intentional discrimination" and the frequency by which plaintiffs must "rely on bits and pieces of

information to support an inference of discrimination, *i.e*., a mosaic of intentional

discrimination." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 86 (2d Cir. 2015)

(internal citations and quotation marks omitted).

### 2.   Analytical Framework for Hostile Work Environment Claims

Section 1981 and Title VII have been interpreted to provide a cause of action for

employment discrimination based on a hostile work environment.  *See, e.g., Whidbee v.*

*Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981); *Patterson v. Cty. of*

*Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (Title VII).  However, hostile work environment

claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test described

above.  *See Grant v. United Cerebral Palsy of N.Y. City, Inc.*, No. 11 Civ. 00018 (LGS), 2014

WL 902638, at *8 (S.D.N.Y. Mar. 7, 2014).  Instead, to establish a claim for hostile work

environment, a plaintiff must show that the harassment was "sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment."

*Terry v. Ashcroft*, 336 F.3d 128, 147–148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d

365, 373 (2d Cir. 2002)); *see also Whidbee*, 223 F.3d at 69 (noting hostile work environment claims are analyzed under the same standards for both § 1981 and Title VII claims).

\* \* \*

Defendants argue Spence fails to state a plausible claim for two reasons:  (1) many of the allegations do not constitute "adverse employment actions" for purposes of the discrimination claim; and (2) she failed to plead facts sufficiently severe or pervasive to give rise to a hostile work environment claim.

### 3.  Discrimination: Adverse Employment Actions

To establish a *prima facie* case for employment discrimination, plaintiff must establish that:  (1) she is a member of a protected class; (2) was qualified for the position held; (3) suffered an adverse employment action; and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.  An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).  To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing *Galabya*, 202 F.3d at 639). Materially adverse change may be indicated by "a termination of employment; a demotion with a decrease in wage or salary or a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other indices unique to a particular situation."  *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 436 (S.D.N.Y. 2008).

Here, the TAC contains factual allegations, that when construed together, state a claim for discrimination.  Spence alleges that she was subject to the following actions:

- A superior issued her a disciplinary report on March 4, 2014, TAC at ¶ 28;[4]

- She was assigned to less desirable or unsafe posts, *id.* at ¶¶ 28–29;

- She was excluded from one meeting and accused of lying during another meeting, *id.* at ¶¶ 23–39;

- She received an unfavorable evaluation from Bukofzer, *id.* at ¶ 45; and

- She was demoted in May 2014 and October 17, 2014 and her salary was decreased, *id.* at ¶¶ 40, 49.

Defendants do not dispute that the demotions Spence received in May 2014 and on October 17, 2014 may be deemed adverse for purposes of this motion, but argue the remainder of the allegations do not rise to the level of adverse employment actions sufficient to state a claim. *See* Defs.' Mem. at 12.

Being assigned less desirable posts or being excluded from meetings do not alone constitute adverse employment actions. *See James v. Mun. Credit Union,* No. 13 Civ. 4568 (LTS), 2016 WL 698136, at *4 (S.D.N.Y. Feb. 19, 2016) (dismissing discrimination claim where employee felt excluded from certain company events and employer made negative remarks about her). However, reprimands and negative performance evaluations or ratings "may, in some circumstances, constitute adverse employment action for purposes of a discrimination claim." *Lawrence v. Mehlman,* 389 F. App'x 54, 56 (2d Cir. 2010) (listing cases and noting that whether the action is adverse "is typically a question of fact for the jury"). Where a plaintiff's negative reviews lead to "tangible harm or consequences," they may constitute adverse actions. *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000). Here, Spence alleges that in May 2014 she was demoted to performing radio dispatch

---

[4] For the reasons discussed above, this report cannot be considered for purposes of the Title VII discrimination claim under the applicable statute of limitations.

duties with a salary decrease.  TAC at ¶ 40.  She further alleges that approximately one month

after receiving an unfavorable review from Bukofzer—despite her original favorable review

from other supervisors—she was stripped of her Housing Inspector title and was demoted to the

position of payroll clerk.  *Id.* at ¶¶ 48–50.  These allegations of negative performance reviews

that thereafter led to a diminution of responsibilities, demotion, and salary reduction are

sufficient to plausibly allege a claim for discrimination.

### 4.   Hostile Work Environment Claims

To adequately plead a hostile work environment claim, a plaintiff must allege conduct

that "(1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable

person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively

perceives as hostile or abusive;' and (3) 'creates such an environment because'" the plaintiff is a

member of a protected class.  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting

*Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).  A workplace can be regarded as hostile

if it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working

environment."  *Harris*, 510 U.S. at 21.

An environment's hostility should be assessed based on the "totality of the

circumstances."  *Id.* at 23.  Factors that a court might consider in assessing the totality of the

circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is threatening and humiliating, or a mere offensive utterance; and (4) "whether it

unreasonably interferes with an employee's work performance."  *Id.*  "Ultimately, to avoid

dismissal…a plaintiff need only plead facts sufficient to support the conclusion that she was

faced with "harassment ... of such quality or quantity that a reasonable employee would find the

conditions of her employment altered for the worse," and the Second Circuit has "repeatedly

cautioned against setting the bar too high in this context." *Patane*, 508 F.3d at 113 (citing *Terry*,

336 F.3d at 148) (emphasis and internal quotation marks omitted).

Here, Spence's hostile work environment claim is predicated on the following

allegations—which are substantially the same as the discriminatory acts alleged that support her

discrimination claim:  she received a negative evaluation from Bukofzer; she was excluded from

one meeting and accused of lying at another; she received unfavorable or unsafe assignments;

she was demoted and received salary decreases; and Bukofzer referred to black employees as

"her monkeys" and "slaves."   Moreover, Spence alleges that she repeatedly complained

internally "about the racially hostile work environment" and the "continuing racial

discrimination issues" in her office to no avail.  TAC at ¶¶ 41, 44.

Spence's hostile work environment claim, when viewed in the light most favorable to

her, plausibly describes an objectively hostile work environment that could have reasonably

interfered with her ability to work—especially in light of the alleged derogatory statements and

Spence's multiple complaints. *See, e.g., Vega*, 801 F.3d at 92 ("Some of these actions,

considered individually, might not amount to much.  Taken together, however, they plausibly

paint a mosaic of retaliation…").  Although the TAC does not state how pervasive the racial

slurs were or whether Spence herself was subjected to these slurs, a jury could well conclude that

she was subject to severely offensive conduct that interfered with her ability to perform her

functions. *See Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) (concluding that "general

allegations of constant abuse" create a jury question as to severity and pervasiveness "even in the

absence of specific details about each incident").  Although whether a particular work

environment is objectively hostile is necessarily a fact-intensive inquiry, the Court concludes that

Spence has alleged sufficient facts to be "entitled to offer evidence to support her claim."  *See*

*Patane*, 508 F.3d at 114 (vacating district court's dismissal of hostile work environment claim).

The Court therefore DENIES Defendants' motion to dismiss the hostile work environment claim.

### C.  Failure to Exhaust Administrative Remedies for Title VII Retaliation Claim

Defendants further argue that the Title VII retaliation claim must be dismissed for failure

to exhaust administrative remedies.  Defs.' Mem. at 8–9.[5]  It is well established that Title VII

requires a plaintiff to exhaust administrative remedies before filing suit in federal court.  *Fowlkes*

*v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015); *Ragone v. Atlantic Video at*

*Manhattan Ctr*., 595 F.3d 115, 126 (2d Cir. 2010).  "The purpose of this exhaustion requirement

is to give the administrative agency the opportunity to investigate, mediate, and take remedial

action."  *Fowlkes*, 790 F.3d at 384 (quoting *Brown v. Coach Stores, Inc*., 163 F.3d 706, 712 (2d

Cir. 1998)).  Thus, if a plaintiff does not include a claim in its filing with the EEOC, that

particular claim is generally barred from review in federal court.  *See Legnani v. Alitalia Linee*

*Aeree Italiane, S.P.A*., 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies

through the EEOC is 'an essential element' of the Title VII ... statutory scheme[] and, as such, a

precondition to bringing such claims in federal court.").  However, Courts allow plaintiffs to

proceed with claims that have not been exhausted if the allegations are deemed "reasonably

related" to those asserted in the administrative complaint.  *Id.*

Here, Defendants argue that the Title VII retaliation claim must be dismissed for failure

to exhaust administrative remedies because Spence made no allegations in her SDHR complaint

that she was retaliated against.  Defs.' Mem. at 9.  However, the Second Circuit has held that

"alleging retaliation by an employer against an employee for filing a discrimination charge is one

---

[5] Defendants do not argue her Title VII discrimination claim should also be dismissed on this basis.  *See id.*

type of claim we have recognized as 'reasonably related' to the underlying discrimination charge." *Legnani*, 274 F.3d at 686.

Defendants further argue that Spence cannot claim that her alleged retaliation took place *as a result* of her filing the complaint with SDHR on December 30, 2014 because the termination of her probationary period as a Housing Inspector took place on October 17, 2014—over two months *before* she filed her SDHR Complaint.  Defs.' Mem. at 9.  However, Defendants ignore the discriminatory conduct she alleges occurred immediately after she complained to HPD's E.E.O. Department in June and September 2014.  Spence lodged discrimination complaints with the E.E.O. Department on both June 24, 2014 and September 12, 2014, and on September 12, 2014—contemporaneous to her second internal complaint—was given a rating of "unsatisfactory" by Bukofzer.  TAC at ¶¶ 41–45.  Moreover, Spence alleges that HPD unlawfully terminated her probationary employment a month after her second internal complaint. *Id.* at ¶¶ 47–49.

As such, the Court finds Spence's retaliation claim is reasonably related to the underlying discrimination charge.  Therefore, Spence's Title VII retaliation claim is not time-barred, and Defendants' motion with respect to this claim is DENIED.

### D.  Liability of the Individual and City Defendants

Defendants correctly assert that the Title VII claims against Bukofzer must be dismissed because Title VII does not permit individual liability.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."); *Patterson*, 375 F.3d at 226 ("Title VII claims are not cognizable against individuals, individuals may be held

liable under §§ 1981 and 1983 for certain types of discriminatory acts."). Accordingly, the Court GRANTS Defendants' motion to dismiss the Title VII claims against Bukofzer with prejudice.

Defendants also argue that Spence's § 1981 claims against HPD must be dismissed because she fails to plausibly plead municipal liability. *See* Defs.' Mem. at 16–17. A municipality cannot be held liable under § 1981 solely on a theory of *respondeat superior.* *Patterson*, 375 F.3d at 226 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978)). A § 1981 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding that because the "express 'action at law' provided by § 1983 ... provides the exclusive federal damages remedy for [a] violation of the rights guaranteed by § 1981," plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases"); *see also Monell*, 436 U.S. at 694 (holding that a local government may not be sued under § 1983 unless "execution of [the] government's policy or custom ... inflicts the injury"); *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003) (applying *Monell* standard to hostile work environment claim under 42 U.S.C. § 1983).[6]

The Second Circuit has established a two-pronged test for claims brought against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely

---

[6] The requirements for imposing municipal liability under 42 U.S.C. § 1983 are the same as those applicable to claims brought against municipalities under 42 U.S.C. § 1981. *See Daughtry v. City of New York*, No. 12 Civ. 2655 (RER), 2015 WL 2454115, at *8 (E.D.N.Y. Feb. 23, 2015) ("Case law suggests that courts resolve §§ 1981 and 1983 claims under the same substantive standards, although they might frame the analysis differently.") (collecting cases); *Carmody v. Village of Rockville Ctr.*, 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009) (claims of discrimination and retaliation under Section 1981 employ "the same standard for prevailing on a claim of municipal liability under Section 1983, also known as a *Monell* claim").

employing the misbehaving [official].'"  *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.  *Id.*

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Cuellar v. Love*, No. 11 Civ. 3632 (NSR), 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y. 1996)).

The TAC does not allege that HPD adopted any recognized policy under the first prong of the Second Circuit test, nor does it suggest that Bukofzer is a final policymaker sufficient to satisfy the second prong.  Thus, the only remaining alternatives to plead *Monell* liability requires alleging a practice so widespread that it constitutes a custom or usage, or a failure to train or supervise.  Here, Spence has failed to plead the requirements to impose municipal liability under either alternative.  Spence fails to allege any facts that HPD has a policy, practice, or custom that caused violations of Spence's constitutional rights or contributed to a hostile work environment, or that HPD engaged in inadequate training and supervision that amounts to deliberate indifference.  While Spence argues that "[i]t is clear from the facts alleged that there is a policy that has been endorsed by the HPD … which gave rise to Ms. Bukofzer performing these

actions," Pl.'s Opp. at 5, she cites to no specific facts from the TAC to support this wholly conclusory assertion, and the Court discerns none within it.

Thus, Spence has not met her burden with respect to her § 1981 claims against HPD. Accordingly, Defendants' motion with respect to the § 1981 claims against HPD is GRANTED, and the claims against HPD are dismissed without prejudice. Should Spence decide to pursue the § 1981 claims against HPD, she is granted leave to amend the Complaint.

*   *   *

In sum, Spence's discrimination, retaliation, and hostile work environment claims survive against HPD only under Title VII and against Bukofzer only under § 1981. For both the Title VII discrimination and retaliation claims, any discrete events or acts that took place before March 5, 2014—including the issuance of the March 4, 2014 report—are time-barred. For her Title VII hostile work environment claim, unlike the claims for discrimination and retaliation, the Court shall take into account all allegedly hostile incidents asserted in the TAC as long as one of them occurred within the 300-day statutory time period. *See Nat'l R.R. Passenger Corp.,* 536 U.S. at 117. Spence will be given the opportunity to amend her § 1981 claims to plead municipal liability against HPD.

### E.  State Tort Claims for Intentional and Negligent Infliction of Emotional Distress

Defendants argue that Spence's state tort claims for intentional and negligent infliction of emotional distress must be dismissed for failure to comply with the notice of claim requirements. Doc. 29 at 2.[7]  Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and such notice of claim must be served within 90 days of the claim

---

[7] Defendants also argue that Spence fails to state a plausible claim for intentional or negligent infliction of emotional distress, *see* Defs.' Mem. at 19, but the Court need not decide this issue as the notice of claim issue is dispositive.

arising.  *See* N.Y. Gen. Mun. Law § 50-e.[8]  The Second Circuit has held that state notice-of-

claim statutes apply to state law claims brought in federal court.  *Hardy v. N.Y. City Health &*

*Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  Notice of claim requirements "are construed

strictly by New York state courts," and failure to comply with these requirements "ordinarily

requires a dismissal for failure to state a cause of action."  *Id.* at 793–94 (internal quotation

marks and citations omitted).  "The purpose of the notice-of-claim requirement is to afford the

municipality an adequate opportunity to investigate the claim in a timely and efficient manner

and, where appropriate, to settle claims without the expense and risks of litigation."  *Id.* (quoting

*Fincher v. Cnty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997)).  A notice of claim

must also identify the individual employees whom a plaintiff seeks to assert claims against.  *See*

*Schafer v. Hicksville Union Free Sch. Dist.,* No. 06 Civ. 2531 (JS), 2011 WL 1322903, at *11

(E.D.N.Y. Mar. 30, 2011) (Plaintiffs "may not file a notice of claim naming a municipal entity

and then commence an action against a roster of individual municipal employees.") (internal

quotation marks omitted).

Here, Spence did not file a notice of claim with respect to either Defendant.  Moreover,

her failure to comply with the statutory notice of claim requirements is not cured by the fact that

she filed the initial complaint and notice of claim *pro se*.  *See, e.g., Castillo v. City of N.Y.*, 24

Misc. 3d 1231(A), 899 N.Y.S.2d 58, 58 (Sup. Ct. 2009) ("Petitioner asserts that there is a

reasonable excuse for delay because she attempted to serve a Notice of Claim *pro se*.  However,

courts have not accepted that ignorance of the law serves as a valid excuse for failure to file a

---

[8] The statute reads in relevant part that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises..."  *Id.*

Notice of Claim.") (listing cases); *see also Davis v. Ventimiglia*, 07 Civ. 6043 (LAP), 2009 WL 4910047 (S.D.N.Y. Dec. 21, 2009) (dismissing *pro se* plaintiff's state law claims for failure to comply with notice of claim procedures).

Accordingly, the Court GRANTS Defendants' motion with respect to the negligent and intentional infliction of emotional distress claims against Defendants.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Spence's request to re-open the case in light of the parties' failure to consummate the settlement agreement.  Doc. 35.  The Clerk of the Court is respectfully directed to re-open the matter.

The Court GRANTS in part and DENIES in part Defendants' motion to dismiss as follows:

- The Court DENIES Defendants' motion to dismiss the § 1981 claims against Bukofzer.

- The Court GRANTS Defendants' motion to dismiss the § 1981 claims against HPD without prejudice.

- The Court GRANTS Defendants' to dismiss the Title VII claims against Bukofzer with prejudice.

- The Court DENIES Defendants' motion to dismiss the Title VII claims against HPD.

- The Court GRANTS Defendants' motion to dismiss the intentional and negligent infliction of emotional distress claims against both Bukofzer and HPD with prejudice.

Should Spence wish to amend to include a § 1981 *Monell* claim, the Fourth Amended Complaint shall be filed by **April 27, 2017**.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 29.  The parties are directed to appear for a status conference on **May 3, 2017 at 10:00 A.M.**

It is SO ORDERED.


Dated:      March 30, 2017
            New York, New York

                                                Edgardo Ramos, U.S.D.J.